IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


MARZENA MULAWKA,                    )
                Plaintiff,          )
                                    )
        vs.                         )        Civil Action No. 11-1651
                                    )        Judge Cercone
COMMONWEALTH OF PENNSYLVANIA,       )        Magistrate Judge Mitchell
et al.,                             )
                Defendants.         )

## REPORT AND RECOMMENDATION

I.      Recommendation

        It is respectfully recommended that the motion to dismiss the Amended Complaint filed

on behalf of Defendant Pennsylvania Department of Transportation (ECF No. 54) be granted.  It

is further recommended that the motion to dismiss the Amended Complaint filed on behalf of

Defendant Mercer County, Pennsylvania (ECF No. 58) be granted.  It is further recommended

that the motion to dismiss the Amended Complaint filed on behalf of Defendant Superior

Ambulance Service (ECF No. 63) be denied.

II.     Report

        Plaintiff, Marzena Mulawka, brings this pro se action under Pennsylvania law against

various parties arising out of a January 3, 2010 motor vehicle accident in which she sustained

serious bodily injuries.  Specifically, she sues the Pennsylvania Department of Transportation

(PennDOT), a governmental agency that oversees transportation issues in the Commonwealth of

Pennsylvania; Mercer County, Pennsylvania, where the accident occurred; Trinity Industries,

Inc. and Trinity Products, LLC, manufacturers of the guardrail which punctured her car when the

car struck it and severed her leg; Superior Ambulance Service (Superior), a Pennsylvania

ambulance service which allegedly delayed and was negligent in providing her with medical

treatment following the accident; and John Doe, an Emergency Medical Technician (EMT) who examined her but allegedly refused to provide treatment after the accident.

Currently pending for resolution are three motions to dismiss the Amended Complaint: a motion by PennDOT, a motion by Mercer County and a motion by Superior. For the reasons that follow, the motions to dismiss by PennDOT and Mercer County should be granted, and the motion to dismiss by Superior should be denied.

Facts

On January 3, 2010, Plaintiff was driving her 2005 Ford Freestyle vehicle on Interstate highway I-80 in Mercer County, a road she alleges is owned, under the jurisdiction of, controlled or maintained by PennDOT and Mercer County. (Am. Compl. ¶¶ 27-33.)[1] She alleges that Mercer County entered into a contract with PennDOT for the maintenance and repair of the portion of I-80 on which the accident occurred and that both Mercer County and PennDOT negligently performed their contractual duties, thereby creating a hazardous condition on this roadway, which these entities should have been aware of. (Am. Compl. ¶ 38.)

Plaintiff was traveling in the left lane in an eastbound direction when her car was hit in the rear by an unidentified tractor-trailer, and was pushed into the rear end of another unidentified tractor-trailer that was traveling in front of her vehicle. After the second impact, her vehicle slid onto the southern shoulder and struck the end terminal of the guardrail with the driver's side door. The end terminal penetrated the driver's side door and severed her right leg at the scene of the accident, and also caused numerous other bodily injuries. Plaintiff alleges that the guardrail was defectively designed in that it acted like a spear and penetrated the driver's side door, causing her leg to be severed. (Am. Compl. ¶¶ 40-42.)

---

[1] ECF No. 56.

Plaintiff sustained serious bodily injuries, which required numerous surgeries and a long recuperation time. To add insult to injury, PennDOT sent her a bill for damage to the guardrail. (Am. Compl. ¶¶ 43, 46.)

Plaintiff alleges that two passersby placed a phone call to 9-1-1 shortly after the accident, but it took one and a half hours for an ambulance to arrive at the scene, thereby aggravating and exacerbating the injuries that she sustained. Plaintiff never lost consciousness. Approximately 45 minutes after the accident, John Doe, an EMT, arrived at the scene, approached Plaintiff and realized that she was missing a leg and was bleeding profusely. Plaintiff states that she requested an ambulance, but John Doe advised her that many accidents had occurred that day and he needed to determine the most qualified injury so that he could dispatch an ambulance. Plaintiff advised him that she was about to die and he said he was "sorry" but there was no guarantee an ambulance would arrive. The ambulance did not arrive for another 45 minutes, or an hour and a half after the accident. (Am. Compl. ¶ 55.)

The ambulance that finally arrived was from Superior. Plaintiff alleges that, not only was Superior negligent for failing to arrive for an hour and a half after the accident, but when the EMT from Superior finally arrived, he removed the snow from Plaintiff's leg to view her injuries. As a result, the EMT reopened the blood clot that formed when a passerby put snow on her legs to stop her from bleeding to death. At this point, her legs began spraying/hemorrhaging blood. Plaintiff alleges that Superior failed to stop her bleeding in a timely fashion and as a result, she had lost 55% of her entire blood supply when she arrived at the hospital. She also alleges that Superior failed to conduct a primary assessment of her airway, breathing and circulation; that it failed to conduct an assessment for traumatic and life-threatening injuries resulting from severe blood loss; and that it failed to provide her with any pain medication. (Am.

Compl. ¶¶ 56-61.)

Procedural History

Plaintiff filed this action on December 29, 2011 (ECF No. 1). Jurisdiction is based on diversity of citizenship, because Plaintiff is a citizen of New York, the defendants are citizens of Pennsylvania (PennDOT, Mercer County, Superior, John Doe), Delaware (Trinity Industries, Trinity Highway Products) and Texas (Trinity Industries, Trinity Highway Products) and the amount in controversy exceeds $75,000, excluding interest and costs.[2] A number of defendants filed motions to dismiss. In response, Plaintiff requested that the case be stayed for 60 days so that she could obtain counsel and that motion was granted. She then requested additional time to respond to the motions to dismiss and that request was also granted. Finally, she requested leave to file an Amended Complaint and that request was granted.

The Amended Complaint was filed on October 5, 2012. Count I alleges a claim for breach of express and implied warranties based on the defective guardrail against PennDOT, Mercer County, Trinity Industries and Trinity Highway Products. Count II alleges a claim for negligence based on the defective guardrail against PennDOT, Mercer County, Trinity Industries and Trinity Highway Products. Count III alleges a claim for negligence based on the failure to provide medical care against PennDOT, Mercer County, Superior and John Doe. Count IV alleges a claim for negligent infliction of emotional distress against PennDOT, Mercer County, Superior and John Doe. Count V alleges a claim for intentional infliction of emotional distress against PennDOT, Mercer County, Superior and John Doe. Count VI alleges a claim for failure to warn based on the defective guardrail against PennDOT, Mercer County, Trinity Industries

---

[2] In addition to the Defendants named above, the original complaint also named the Commonwealth of Pennsylvania, Texas Transportation Institute, Texas A&M University System, Ford Motor Corporation and Hawkinson Ford Company. These defendants were removed when she filed the Amended Complaint.

and Trinity Highway Products. Count VII alleges a claim for strict liability/product liability based on the defective guardrail against PennDOT, Mercer County, Trinity Industries and Trinity Highway Products. Count VIII alleges a claim for punitive damages against Trinity Industries, Trinity Highway Products, Superior and John Doe.

On October 4, 2012, a motion to dismiss was filed by PennDOT (ECF No. 54). On October 9, 2012, a motion to dismiss was filed by Mercer County (ECF No. 58). On October 19, 2012, a motion to dismiss was filed by Superior (ECF No. 63).[3]

Standard of Review

The Supreme Court recently issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. District courts are required to engage in a two part inquiry:

First, the factual and legal elements of a claim should be separated. The District

_____

[3] Trinity Highway Products and Trinity Industries have filed answers to the Amended Complaint (ECF Nos. 61, 62).

Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions…. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show the plaintiff has a "plausible claim for relief." … In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

PennDOT argues that is immune from suit based on the Eleventh Amendment. Mercer County argues that it is immune from suit under the Political Subdivision Tort Claims Act (PSTCA) because the alleged negligent design, installation and maintenance of a guardrail does not fall within any exception to that immunity, because there is no exception to immunity for alleged negligent provision of on-scene medical services, and because there is no exception to immunity for claims of negligent and intentional infliction of emotional distress. Mercer County further argues that it cannot be held liable for Plaintiff's state law products liability claims because it was not a "seller" of the guardrail. Superior argues that, under Pennsylvania law, it is not liable for failing to provide care absent a showing of gross negligence or willful misconduct, and her allegations fail to rise to that level. It further argues that she cannot state a claim for negligent infliction of emotional distress because such a claim belongs to a witness or bystander, not the actual accident victim, and that she cannot state a claim for intentional infliction of emotional distress because she has not alleged extreme and outrageous conduct necessary to state such a claim. Superior argues that she cannot state a claim for medical malpractice because she has not supported it with an appropriate Certificate of Merit as required under Pennsylvania law; that her allegations of corporate negligence fail because such a claim has never been extended to an ambulance service; and that she cannot state a claim for punitive damages because (as noted above) she has not alleged outrageous conduct.

PennDOT's Eleventh Amendment Immunity

PennDOT argues that it has Eleventh Amendment immunity barring suit against it in federal court. Plaintiff contends that PennDOT has waived its sovereign immunity in certain subsections of 42 Pa. C.S. § 8522(b). However, PennDOT is not invoking sovereign immunity, but Eleventh Amendment immunity, which bars suit against it in federal court, but not in state court.[4]

The Eleventh Amendment to the Constitution provides that:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court has stated that the presupposition confirmed by the Eleventh Amendment is that "federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (internal citation omitted). The immunity applies not only to the state itself, but also to state agents and state instrumentalities. Thus, courts must examine the essential nature and effect of the proceeding, the nature of the entity created by state law or the issue of whether a money judgment against the instrumentality would be enforceable against the state to determine whether the instrumentality should be treated "as an arm of the state." Regents of the University of Calif. v. Doe, 519 U.S. 425, 429-30 (1997).

PennDOT is an arm of the state for Eleventh Amendment immunity purposes. See Daye

---

[4] Nevertheless, it must be noted that the analysis below, concluding that Mercer County is entitled to local agency immunity and that neither the streets nor the real property exception applies, would also lead to the conclusion that sovereign immunity bars suit against PennDOT and that neither the streets nor the real property exception applies. Indeed, several of the cases discussed below specifically concern PennDOT.

v. Commonwealth of Pa., 483 F.2d 294, 297-99 (3d Cir. 1973) (holding both the Commonwealth and PennDOT immune under the Eleventh Amendment); Ali v. Lyons, 2004 WL 835345, at *1 (E.D. Pa. Apr. 16, 2004); McDowell v. Commonwealth of Pa. Dep't of Transp., 1996 WL 432481, at*2 (E.D. Pa. July 18, 1996). The immunity applies to both federal and state law claims. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984).

The Court of Appeals for the Third Circuit has indicated that:

> Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law. The third exception ... is the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.714 (1908).

Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted). The first exception does not apply here, and Pennsylvania has not consented to waive its Eleventh Amendment immunity to being sued in federal court. See 1 Pa. C.S. § 2310; 42 Pa. C.S. § 8521(b); Chittister v. Department of Cmty. & Econ. Dev., 226 F.3d 223, 227 (3d Cir. 2000). With respect to the third exception, the Court of Appeals has explained that:

> The theory behind Young is that a suit to halt the enforcement of a state law in conflict with the federal constitution is an action against the individual officer charged with that enforcement and ceases to be an action against the state to which sovereign immunity extends; the officer is stripped of his official or representative character and becomes subject to the consequences of his individual conduct. The relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages.

MCI Telecommunication Corp. v. Bell Atlantic-Pa., 271 F.3d 491, 506 (3d Cir. 2001) (citations omitted).

"In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective." Verizon Md., Inc. v. Public Service Comm'n of Md., 535 U.S. 635, 645 (2002) (citation omitted).  Plaintiff has not alleged an ongoing violation of federal law.  Rather, she alleges that PennDOT violated her rights under state law in the past when it failed to maintain the roadway in a safe condition and failed to provide appropriate medical care, and she seeks monetary damages as relief.  Therefore, the Eleventh Amendment applies to foreclose suit against PennDOT in this case and its motion to dismiss should be granted.

Local Agency Immunity

The PSTCA provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. C.S. § 8541. The Act then provides that:

> A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> (1)  The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
> (2)  The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b).  As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa. C.S. § 8542(a).  The statute lists eight negligent acts for which recovery against the local agency is permitted: 1) vehicle liability; 2) care, custody or control of personal property; 3) care, custody or control of real property; 4) trees, traffic controls and street lighting; 5) utility service facilities; 6) streets; 7) sidewalks; and 8) care, custody or control of animals.  42 Pa. C.S.

§ 8542(b).

Mercer County is a "local agency" entitled to immunity under § 8541 unless one of the exceptions in § 8542(b) applies. 42 Pa. C.S. § 8501; Weaver v. Franklin County, 918 A.2d 194, 199 (Pa. Commw. 2007); Simko v. County of Allegheny, 869 A.2d 571, 573 (Pa. Commw. 2005). As an initial matter, the statute specifically states that the term "negligent acts" "shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." § 8542(a)(2). Therefore, Count V, which alleges a claim of intentional infliction of emotional distress, cannot fall within the exceptions and Plaintiff cannot maintain such a claim against Mercer County. See Wakshul v. City of Phila., 998 F. Supp. 585, 588 (E.D. Pa. 1998).

Second, courts have held that claims of negligent infliction of emotional distress do not fall within any of the specified categories where immunity has been waived. See DeBellis v. Kulp, 166 F. Supp. 2d 255, 281 (E.D. Pa. 2001); Zernhelt v. Lehigh County Office of Children & Youth Servs., 659 A.2d 89, 91 (Pa. Commw. 1995). Therefore, Count IV cannot be maintained against Mercer County.

In Counts I, II, VI and VII, Plaintiff asserts claims based on the alleged defective design of the guardrail. Mercer County argues that Pennsylvania courts have held that such claims do not fall within any exception to local immunity.

In Stein v. Pennsylvania Turnpike Commission, 989 A.2d 80 (Pa. Commw. 2010), appeal denied, 20 A.3d 1214 (Pa. 2011), the Commonwealth Court addressed a case with facts highly similar to those presented herein. Plaintiff's decedent car was traveling on the Pennsylvania Turnpike during a heavy rain when it hydroplaned and spun off the road, eventually striking the end of a guardrail, a U-shaped piece of metal known as a "boxing glove." As described by the

court:

> The accident took place the afternoon of September 15, 2003, during a heavy rain. Decedent's car hydroplaned and spun off the roadway through the gap in the guardrail onto the grassy hill. The vehicle continued spinning as it turned down the hill, hitting the "boxing glove" end of the guardrail with such force that the sides of the boxing glove folded back, creating a sharp, chisel-like shape. The folded back metal impaled Decedent's vehicle on the passenger side and drove into the vehicle. In doing so, the guardrail amputated Decedent's right leg below the knee; Decedent's loss of blood caused his death.

Id. at 82.  Plaintiff brought a wrongful death and survival action alleging negligence by the Turnpike Commission, particularly with respect to the design of the guardrail.  The trial court granted the Commission's motion for summary judgment on the ground of sovereign immunity.  The plaintiff appealed, arguing, inter alia, that the boxing glove end treatment of the guardrail was a "dangerous real estate condition" and therefore fell within the exception to sovereign immunity at § 8522(b)(4).[5]

The court began by reviewing the case law on sovereign immunity arising out of situations involving guardrails.  First, in Dean v. Department of Transportation, 751 A.2d 1130 (Pa. 2000), the Pennsylvania Supreme Court held that the lack of a guardrail could not constitute a dangerous condition of realty because it did not render the highway unsafe for the purposes for which it was intended, i.e., travel on the roadway.  Then the Commonwealth Court rejected a claim that a Jersey barrier should have taller to prevent a tractor trailer from flipping over it.  Svege v. Interstate Safety Serv., Inc., 862 A.2d 752 (Pa. Commw. 2004).  Similarly, the court rejected a claim that pedestrians brought arising out of the failure to install a guardrail.  Simko v. Commonwealth of Allegheny, 869 A.2d 571 (Pa. Commw. 2005).  Simko dealt with the streets

---

[5] Commonwealth agencies are entitled to sovereign immunity pursuant to 42 Pa. C.S § 8521 unless an exception to such immunity as listed in § 8522(b) applies.  The list of exceptions to immunity for Commonwealth parties is very similar to the list of exceptions for local agencies in § 8542(b).

exception to local immunity under § 8542(b)(6), but the court in <u>Stein</u> observed that "it is equally applicable to Commonwealth liability under the Sovereign Immunity Act, because as observed by the <u>Dean</u> court, those two acts 'deal with indistinguishable subject matter.'" 989 A.2d at 86 n.5 (quoting <u>Dean</u>, 751 A.2d at 1133 n.6).

Finally, the court rejected a claim that PennDOT had negligently designed and maintained a guardrail with a turned-down end. <u>Fagan v. Department of Transp.</u>, 946 A.2d 1123 (Pa. Commw. 2008) (en banc). The plaintiff in <u>Stein</u> attempted to distinguish all of these cases on the ground that the guardrails had not been the direct cause of the harm; they simply failed to prevent vehicles from traveling into a path of danger. The court rejected this attempt:

> This case cannot be distinguished from <u>Fagan</u>, where we held the Commonwealth immune from suit where the guardrail end treatment catapulted a car into the air, causing fatal injuries. As in <u>Fagan</u>, we hold the Commonwealth to be immune from suit where the guardrail end treatment folds back and impales a vehicle, causing fatal injuries. It is for the General Assembly, not this Court, to expand the exception in Section 8522(b)(4) of the Sovereign Immunity Act, 42 Pa. C.S. § 8522(b)(4), to include a waiver for the negligent design and installation of guardrails next to a Commonwealth highway.

989 A.2d at 88. <u>See also</u> <u>Lambert v. Katz</u>, 8 F.3d 409 (Pa. Commw. 2010) (no exception to sovereign immunity based on allegations that PennDOT negligently failed to maintain guardrails); <u>Quinones v. Commonwealth of Pa. Dep't of Transp.</u>, 45 A.3d 467 (Pa. Commw. 2012) (no exception to sovereign immunity under theory that PennDOT failed to install a median barrier).

Because Mercer County is a local agency, the only possible exceptions to immunity that could apply would be the real property exception, § 8542(b)(3), and the streets exception, § 8542(b)(6). However, the real property exception explicitly states that it does not apply to streets. § 8542(b)(3)(iii). The streets exception applies to:

A dangerous condition of streets owned or under the jurisdiction of

Commonwealth agencies, if all of the following conditions are met:

> (A) The local agency has entered into a written contract with a Commonwealth agency for the maintenance and repair by the local agency of such streets and the contract either:
>
>> (i) had not expired or been otherwise terminated prior to the occurrence of the injury; or
>>
>> (ii) if expired, contained a provision that expressly established local agency responsibility beyond the term of the contract for injuries arising out of the local agency's work.
>
> (B) The injury and dangerous condition were directly caused by the negligent performance of its duties under such contract.
>
> (C) The claimant must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa. C.S. § 8542(b)(6)(ii). Plaintiff alleges that Mercer County has a contract with PennDOT for the maintenance and repair of the portion of I-80 where the accident occurred.

However, as Mercer County correctly notes, this case is indistinguishable from Stein and the cases cited therein. Plaintiff argues that these cases are "simply wrong" and encourages this Court to "make new law." (ECF No. 67 at 14.) However, that is not how federal courts approach issues of state law.

The Court of Appeals has explained that:

> As a federal court sitting in diversity, we are required to apply the substantive law of the state whose law governs the action. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)....
>
> When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are the authoritative source. State Farm Mut. Auto. Ins. Co. v. Coviello, 233 F.3d 710, 713 (3d Cir. 2000). In the absence of a controlling

decision by the Pennsylvania Supreme Court, we must predict how it would rule if faced with the issue. Covington v. Cont'l Gen. Tire, Inc., 381 F.3d 216, 218 (3d Cir.2004). In making such a prediction, "we must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," as well as to "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." Norfolk S. Ry. Co. [v. Basell USA Inc.], 512 F.3d [86,] 92 [(3d Cir. 2008)] (internal quotation marks omitted). We must be mindful that "our duty is to apply state law ... irrespective of what we may regard as its merits," Krauss v. Greenbarg, 137 F.2d 569, 571 (3d Cir.1943); we may not impose our own view of what state law should be, McKenna v. Pac. Rail Serv., 32 F.3d 820, 825 (3d Cir. 1994), nor "expand state law in ways not foreshadowed by state precedent." City of Philadelphia v. Beretta U.S.A. Corp., 277 F.3d 415, 421 (3d Cir.2002).

Spence v. ESAB Group, Inc., 623 F.3d 212, 216-17 (3d Cir. 2010). First, the Dean case

is a decision of the Pennsylvania Supreme Court, which is the authoritative source for

this Court in determining state law (namely, that a guardrail cannot constitute a

dangerous condition of realty because it does not render the highway unsafe for the

purposes for which it was intended, i.e., travel on the roadway.) Moreover, Plaintiff has

pointed to no persuasive data to suggest that the Pennsylvania Supreme Court would not

follow the decisions in the other Commonwealth Court decisions cited above. This

Court's duty is not to impose its own view of what the law regarding guardrails should

be, nor to expand state law in ways not foreshadowed by state precedent.

Plaintiff alleges that the guardrail was negligently designed, installed or maintained, but

those allegations do not fall within the streets exception to local immunity because the alleged

defects in the guardrail did not render the street (that is, I-80) unsafe for the purposes for which it

was intended, i.e., travel on the roadway. Based upon all the authority cited above, Mercer

County is entitled to local agency immunity. Therefore, with respect to Counts I, II, VI and VII,

the motion to dismiss filed by Mercer County should be granted.[6]

Finally, Count III alleges a claim of negligence arising out of the failure to provide medical care. The Commonwealth Court has held that "governmental immunity bars medical malpractice suits against [local agencies] and against health care workers employed by [the local agency] because negligence involving medical treatment does not fall within any of the governmental immunity exceptions at 42 Pa. C.S. § 8542(b)." City of Phila. v. Glim, 613 A.2d 613, 616-17 (Pa. Commw. 1992) (citing Weissman v. City of Phila., 513 A.2d 571 (Pa. Commw. 1986), Matteo v. City of Phila., 512 A.2d 796 (Pa. Commw. 1986), and Henagan v. Katz, 509 A.2d 1387 (Pa. Commw. 1986) (footnote omitted). Plaintiff has not even alleged that Superior or John Doe were employed by Mercer County; rather they appear to be a private company and a private employee, respectively. Even if she made this allegation, however, claims of medical malpractice are not within the exceptions to local agency immunity in § 8542(b). Therefore, with respect to Count III, the motion to dismiss filed by Mercer County should be granted. In sum, Plaintiff cannot maintain any of her claims against Mercer County and its motion to dismiss should be granted.

Superior's Arguments

Plaintiff alleges claims against Superior for negligence in providing medical care (Count III), negligent infliction of emotional distress (Count IV), intentional infliction of emotional distress (Count V) and punitive damages (Count VIII). Superior contends that, under Pennsylvania law, it is not liable for failing to provide care absent a showing of gross negligence or willful misconduct, and her allegations fail to rise to that level. It further argues that she cannot state a claim for negligent infliction of emotional distress because such a claim belongs to

---

[6] The Court need not reach Mercer County's alternative argument that it cannot be held liable for products liability claims because it was not a "seller" of the product.

a witness or bystander, not the actual accident victim, and that she cannot state a claim for intentional infliction of emotional distress because she has not alleged extreme and outrageous conduct necessary to state such a claim. Superior argues that she cannot state a claim for medical malpractice because she has not supported it with an appropriate Certificate of Merit as required under Pennsylvania law; that her allegations of corporate negligence fail because such a claim has never been extended to an ambulance service; and that she cannot state a claim for punitive damages because (as noted above) she has not alleged outrageous conduct.

### Negligence Claim

In Count III, Plaintiff alleges a claim of negligence against Superior and John Doe regarding the medical care she received (or did not receive) at the scene of the accident. Superior moves to dismiss this claim on the grounds that: 1) she has failed to allege gross negligence or willful misconduct by an EMT or ambulance service; 2) she has failed to support her medical malpractice claim with a Certificate of Merit; and 3) she cannot state a claim for corporate negligence because such a claim does not apply to an ambulance service.

### Level of Negligence Required for EMS Agency and Provider

Superior cites the Emergency Medical Services System Act (EMSSA), which provides that:

> No EMS agency, EMS agency medical director or EMS provider who in good faith attempts to render or facilitate emergency medical care authorized by this chapter shall be liable for civil damages as a result of an act or omission, absent a showing of gross negligence or willful misconduct. This paragraph shall also apply to students enrolled in approved courses of instruction and supervised pursuant to rules and regulations.

35 Pa. C.S. § 8151(2). The Act defines an "EMS agency" as including an entity that provides emergency medical services by operating an ambulance, and "EMS provider" as including an emergency medical responder and emergency medical technician. 35 Pa. C.S. § 8103.

16

Therefore, Superior argues that it, John Doe (who allegedly failed to dispatch an ambulance upon arriving at the scene 45 minutes after the accident) and the unidentified EMT who allegedly caused Plaintiff's injuries to hemorrhage at the accident scene cannot be held liable because she has not alleged gross negligence or willful misconduct.

However, as Plaintiff (a pro se litigant) notes, Superior has overlooked the fact that the EMSSA was enacted on August 18, 2009, with a note that it would be effective in 180 days, namely on February 16, 2010. The accident in this case occurred on January 3, 2010, before the effective date of this statute. Thus, applying the EMSSA to bar Plaintiff's negligence claim would constitute retroactive application of the statute.

"No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa. C.S. § 1926. The EMSSA contains no provision that it is to be applied retroactively. "Statutes relating to procedural matters have been held applicable to cases filed after the effective date, but when substantive rights are involved the applicable law must be that which is in effect at the time the cause of action arises." Bell v. Koppers Co., 392 A.2d 1380, 1382 (Pa. 1978). "A tort cause of action generally accrues on the date of the accident or injury." Gibson v. Commonwealth, 415 A.2d 80, 83 (Pa. 1980).

The Pennsylvania Superior Court has explained that:

> A law is only retroactive in its application when it relates back and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired. 1 Pa. C.S. § 1926; McMahon v. McMahon, 417 Pa. Super. 592, 601-02, 612 A.2d 1360, 1364 (1992) (en banc). Only where no substantive right or contractual obligation is involved may a subsequently enacted statute be applied to a condition existing on its effective date where the condition results from events occurring prior to the effective date of the statute. Creighan v. Pittsburgh, 389 Pa. 569, 574-75, 132 A.2d 867, 870 (1957); Brangs v. Brangs, 407 Pa. Super. 43, 50-51, 595 A.2d 115, 119 (1991). A newly enacted law may be applied retroactively if it impairs no contract and disturbs no vested right, but only varies remedies, cures defects in proceedings otherwise fair, and does not vary existing obligations contrary to their situation when originally undertaken. Smith

17

v. Fenner, 399 Pa. 633, 641, 161 A.2d 150, 154 (1960). Moreover, amendatory statutes are not to be construed as retroactive unless such a construction is so clear as to preclude all question as to the intention of the legislature. This rule of statutory construction is particularly applicable when the legislation in question interferes with existing contractual obligations or antecedent rights. DeMatteis v. DeMatteis, 399 Pa. Super. 421, 434, 582 A.2d 666, 672 (1990).

Stroback v. Camaioni, 674 A.2d 257, 260 (Pa. Super. 1996). In that case, the court allowed a plaintiff to recover medical bills by specified insurance programs because the statutory amendment barring such recovery became effective after the date of the accident and the court would not apply the amendment retroactively. The fact that the complaint was filed after the effective date of the statute was irrelevant because the substantive right to recover those damages accrued prior to the statute's effective date and the "amendments could not thereafter affect that vested right." Id. at 262.

Similarly, on January 3, 2010, the date of the accident, Plaintiff was vested with the substantive right to bring suit for negligence arising out of the medical care she received and there was no statutory limitation upon such right.[7] To apply the EMSSA to limit or extinguish her rights by requiring her to plead and prove gross negligence or willful misconduct would constitute improper retroactive application of the statute and Superior's attempt to do so should be rejected.

Certificate of Merit

Superior also cites a Pennsylvania rule stating as follows:

In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

---

[7] There was a predecessor statute, the Emergency Health Services Act, 35 P.S. §§ 6921-38, but it was repealed on August 18, 2009, effective immediately.

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3(a) (2003). Although this provision appears in the Pennsylvania Rules of Civil Procedure, the Court of Appeals has held that it is "substantive law under the Erie Rule and must be applied as such by federal courts." Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 265 (3d Cir. 2011).

However, this provision applies only to a "licensed professional" or a partnership, unincorporated association, corporation or other similar entity responsible for such licensed professional. Pa. R. Civ. P. 1042.1(a)(1, 2). The term "licensed professional" includes, inter alia, "any person who is licensed pursuant to an Act of Assembly as (i) a health care provider as defined by Section 503 of the Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. § 1303.503." Pa. R. Civ. P. 1042.1(c)(1). The MCARE Act, in turn, defines the tem "health care provider" as:

> A primary health care center, a personal care home licensed by the Department of Public Welfare pursuant to the act of June 13, 1967 (P.L. 31, No. 21), known as the Public Welfare Code, or a person, including a corporation, university or other educational institution licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center, and an officer, employee or agent of any of them acting in the course and scope of employment.

40 P.S. § 1303.503 (footnotes omitted). Neither emergency medical technicians (EMTs) nor

ambulance services are listed within these provisions.[8]  It is also noted that Plaintiff's claim does not necessarily involve professional negligence.  See Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009) (whether a complaint sounds in ordinary negligence or professional negligence is a matter of law and "the most distinguishing feature of professional malpractice is the need for expert testimony to clarify complex issues for a jury of laypersons.").  Therefore, Superior has not demonstrated that the provisions of Rule 1042.3 apply in this case and this argument should be rejected.[9]

Corporate Negligence

Finally, Superior argues that Plaintiff cannot state a claim against it for corporate negligence because such a claim has never been extended to ambulance services.  It cites a paragraph in the Amended Complaint in which Plaintiff alleges that Superior failed to properly train and/or supervise its medical personnel (ECF No. 64 at 14, citing Am. Compl. ¶ 83.)  This argument is inapplicable.

The Pennsylvania Supreme Court has held that:

> Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital. This theory of liability creates a nondelegable duty which the hospital owes directly to a patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party.

Thompson v. Nason Hosp., 591 A.2d 703, 707 (Pa. 1991) (footnote omitted).

Plaintiff is not suing Superior for failing to uphold the proper standard of care to her

---

[8] This is not surprising, given that the legislature specifically enacted the EMSSA to address negligence claims involving EMTs and ambulance services.

[9] It is noted that, even if Plaintiff were required to submit a certificate of merit, the Rule indicates that, at least 30 days prior to filing a praecipe for a judgment of non pros (or a motion to dismiss, if the case is in federal court), the defendant is required to file a written notice of intention to file the praecipe and serve it on the plaintiff, and to attach to the praecipe a certificate of service of the notice of intention.  Pa. R. Civ. P. 1042.6(a), 1042.7(a)(3, 4).  Superior has not done so.

independent of the acts of its employees. Rather, Plaintiff is alleging that Superior is liable for the acts and omissions of its employees. Thus, she is not alleging a claim of corporate negligence and Superior's argument should be rejected.

For these reasons, with respect to Count III of the Amended Complaint, the motion to dismiss filed by Superior should be denied.

Negligent Infliction of Emotional Distress

In Count IV, Plaintiff alleges a claim of negligent infliction of emotional distress. Superior moves to dismiss this claim on the ground that she cannot allege this tort when she was the victim and did not observe injury to another person.

Superior cites a case stating as follows:

> In Pennsylvania, a cause of action for negligent infliction of emotional distress depends upon three factors:
>
> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it;
>
> (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and
>
> (3) Whether plaintiff and the victim were closely related as contrasted with an absence of any relationship or the presence of only a distant relationship.
>
> Sinn v. Burd, 486 Pa. 146, 171, 404 A.2d 672, 685 (1979). Recovery is further limited by the requirement that the person seeking the damages must suffer physical injury as a result of actually witnessing the harm to the close relative. Mazzagatti v. Everingham by Everingham, 512 Pa. 266, 516 A.2d 672 (1986).

Brown v. The Devereux Foundation, 1996 WL 114812, at *2 (E.D. Pa. Mar. 15, 1996) (quoting Love v. Cramer, 606 A.2d 1175, 1177 (Pa. Super.), appeal denied, 621 A.2d 580 (Pa. 1992)).

However, that case was describing only one scenario that supports a claim of negligent infliction of emotional distress. As the Superior Court has explained:

21

the cause of action for negligent infliction of emotional distress is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative.

Toney v. Chester County Hosp., 961 A.2d 192, 197-98 (Pa. Super. 2008) (en banc) (citation omitted), aff'd by an equally divided court, 36 A.3d 83 (Pa. 2011).  In Toney, the plaintiff had been erroneously told that an ultrasound revealed no fetal abnormalities, but she was awake when her baby was born with severe abnormalities and suffered shock, numerous emotional difficulties, nausea and headaches, insomnia, nightmares and many other symptoms and was disabled from work.  The court held that these allegations stated a claim under the first scenario, because she was owed a duty of care in that she was under the medical care and treatment of the defendants and she sufficiently pleaded a breach of that duty.

Superior has pointed to no authority holding that a claim for negligent infliction of emotional distress exists only when the plaintiff is a witness to injury to another person; that is merely one scenario.  See Daly v. New Century Trans, Inc., 2012 WL 4060687, at *7 (M.D. Pa. Sep. 14, 2012) (plaintiff whose car was struck by truck driver who fell asleep met three of four scenarios, two of which involved injury to herself); Restatement (Second) of Torts § 313 (defining tort of negligent infliction of emotional distress, but not limiting recovery to scenario in which plaintiff witnesses injury to another person).  In this case, Plaintiff has alleged that Superior and its employees provided medical treatment to her, albeit allegedly insufficient treatment, and she alleges that she suffered injury from their actions.  This is sufficient at this stage of the case to state a claim.  Therefore, with respect to Count IV, the motion to dismiss filed by Superior should be denied.

<u>Intentional Infliction of Emotional Distress</u>

In Count V, Plaintiff alleges a claim of intentional infliction of emotional distress arising out of the failure to provide her with proper medical care. Superior argues that her allegations are insufficient to state a claim.

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46(1) (1965). Although the Pennsylvania Supreme Court has never expressly adopted this section of the Restatement, it has pointed to the Restatement's definition to describe the level of behavior necessary to maintain such a claim. <u>Hoy v. Angelone</u>, 720 A.2d 745, 753 (Pa. 1998). The court observed that:

> courts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven. Indeed our Superior Court has noted, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Buczek v. First National Bank of Mifflintown</u>, 366 Pa. Super. 551, 558, 531 A.2d 1122, 1125 (1987). Described another way, "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts §46, comment d; <u>Daughen v. Fox</u>, 372 Pa. Super. 405, 412, 539 A.2d 858, 861 (1988).

<u>Id.</u> at 753-54.

Superior notes that only a few cases have presented behavior so "outrageous" that courts have been willing to allow a claim for intentional infliction of emotional distress. <u>See</u> <u>Papieves v. Lawrence</u>, 263 A.2d 118 (Pa. 1970) (defendant stuck and killed the plaintiffs' son with a car, failed to seek medical attention, and buried the body in a field); <u>Banyas v. Lower Bucks Hosp.</u>,

437 A.2d 1236 (Pa. Super. 1981) (plaintiff was involved in a fight which resulted in the other participant receiving a broken jaw that required surgery, but the person died during surgery due to hospital negligence; the hospital falsified the records and the plaintiff was charged with murder); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979) (team physician falsely reported to the media that football player had a fatal disease).

Superior argues that, by contrast, all Plaintiff has alleged here is that it failed to timely dispatch an ambulance and that its alleged employees failed to render timely and proper medical care.  However, Plaintiff's allegations go beyond mere negligence: she alleges that an EMT removed the snow from her wound, reopening it and nearly causing her to bleed to death.  She also alleges that Superior's employees failed to perform basic procedures and provide pain medication at the scene of the accident.  Whether these allegations will ultimately be sufficient to sustain her claim cannot be determined at this stage of the proceeding.  Accepting Plaintiff's allegations as true, she has stated a claim for intentional infliction of emotional distress. Therefore, with respect to Count V, the motion to dismiss filed by Superior should be denied.

Punitive Damages

In Count VIII, Plaintiff alleges a claim of punitive damages.  Superior moves to dismiss this claim, arguing that it does not allege sufficiently outrageous conduct.  As explained above, this issue cannot be decided at this stage of the proceedings.  The ultimate determination of whether punitive damages are appropriate is a question for the finder of fact.  G.J.P. v. Johnson, 713 A.2d 1127, 1131 (Pa. 1998).  If Plaintiff can substantiate the allegations of her Amended Complaint, a reasonable finder of fact could conclude that Superior failed to perform its duties despite knowing that such failure created an unreasonable risk of physical harm substantially greater than mere negligence and thus award punitive damages.  Therefore, with respect to Count

VIII, Superior's motion to dismiss should be denied.

For these reasons, it is recommended that the motion to dismiss the Amended Complaint filed on behalf of Defendant Pennsylvania Department of Transportation (ECF No. 54) be granted. It is further recommended that the motion to dismiss the Amended Complaint filed on behalf of Defendant Mercer County, Pennsylvania (ECF No. 58) be granted. It is further recommended that the motion to dismiss the Amended Complaint filed on behalf of Defendant Superior Ambulance Service (ECF No. 63) be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within the time specified in the Notice of Electronic Filing. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will waive the right of appeal.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: November 28, 2012

cc:     Marzena Mulawka
        500 Riverside Dr., Unit 268
        New York, NY 10027